# Exhibit A

TAYLOR & GOMEZ LLP
Benjamin Taylor, SBN: 023868
2600 North 44th Street, Suite B-101
Phoenix, Arizona 85008
Phone: 602 403-0212 Fax: 602-957-3257
E-mail:  bt@taylorgomezlaw.com

BIHN & McDANIEL, P.L.C.
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
(602) 248 9779
Martin A. Bihn (014338)
mbihn@phxlegal.com
Donna M. McDaniel (017366)
donna@phxlegal.com

*Attorneys for Plaintiff Lorenzo Jones*

# ARIZONA SUPERIOR COURT
# IN AND FOR MARICOPA COUNTY

| | |
|---|---|
| Lorenzo Jones, | Case No.  CV-2021-010635 |
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | **TIER 2** |
| City of Mesa, Aaron Pew; | |
| Defendants. | |

Plaintiff, for his complaint against defendant alleges as follows:

1. Plaintiff Lorenzo Jones is a resident of Maricopa County, Arizona.

2. Defendant City of Mesa is a public body.

3. Defendant Aaron Pew is a police officer with the City of Mesa and, upon information and belief, is a resident of Maricopa County, Arizona.

4. Defendants have caused events to occur in Maricopa County out of which this matter arises.

5. Jurisdiction and venue are proper with the Arizona Superior Court in Maricopa County, Arizona.

6. This is a Tier 2 case. More than 60 days have elapsed since the City of Mesa was served with a Notice of Claim in full compliance with ARS 12-821.01.

7. On July 6, 2020, Lorenzo Jones was reportedly involved in an altercation with family members in the hallway of the apartment complex where he resided with his fiance, Tenisha Gaston, and five toddler children.

8. As officers were arriving on scene, dispatch allegedly stated that Lorenzo could potentially be armed.

9. When officers arrived, Lorenzo reportedly attempted to evade law enforcement and prevent the arrest of his fiance, which officers claim resulted in the assault of Officer Jacob Harris, #17060.

10. Officers tased Lorenzo multiple times before taking him into custody.

11. After being handcuffed, officers performed a search of Lorenzo's person.

12. Officer discovered no weapons.

13. After being seen by Mesa Fire and Medical for his injuries, Lorenzo was transported and booked into the Mesa City Jail.

14. On July 12, 2020, Lorenzo was released from custody after posting a $5,000 bond.

15. Upon his release, Lorenzo received a Final Release Order and Order Regarding Counsel.

16. As one of Lorenzo's release conditions, he was ordered to attend a Status Conference and Preliminary Hearing at the Southeast Regional Court Center.

17. The Status Conference was scheduled to take place the following day, July 13, 2020.

18. As instructed, Lorenzo appeared at the Southeast Regional Court Center on July 13, 2020.

19. The Preliminary Hearing was scheduled for July 16, 2020.

20. When Lorenzo arrived at court on July 16, 2020, he was provided with a Court Date Advisement slip.

21. The slip further instructed Lorenzo to return to court on July 21, 2020, for his Initial Appearance.

22. Due to an error by the court, Lorenzo's appearance at his Status Conference was not recorded.

23. The court's error resulted in a bench warrant being issued for Lorenzo for failure to appear (FTA).

24. Once notified about Lorenzo's FTA, Officer Harris, an alleged victim of Lorenzo, requested a warrant be issued for Lorenzo's arrest.

25. As a result of the bench warrant being incorrectly issued. Detective Curtis Simpson, #20376 submitted an affidavit requesting a search warrant be issued for Lorenzo's home.

26. In Detective Simpson's affidavit, he cited unfounded accusations that Lorenzo was in possession of a firearm on July 6, 2020.

27. Detective Simpson further stated that he hoped this search warrant would aid law enforcement in retrieving the firearm that officers were unable to locate during their initial encounter with Lorenzo on July 6, 2020.

28. Judge Tracy Nadzieja issued a search warrant for Lorenzo and his residence on July 15, 2020.

29. On July 16, 2020, the Mesa Police Department's SWAT team, members of the Red Mountain Serious Offender's Unit, and various additional officers and detectives, traveled to the apartment complex where Lorenzo, Tenisha, and their five children resided.

30. This included Mesa Police Department officer, Jacob Harris, an alleged victim of Lorenzo.

31. At approximately 1825 hours, the SWAT team started giving verbal commands using a PA system.

32. The SWAT team negotiator repeatedly stated for any and all occupants of 4104 E. Broadway Road, Unit #1059 to exit the residence.

33. Complying with commands for any and all occupants to exit the apartment Lorenzo, Tenisha, and their five children exited their home.

34. At this time, Lorenzo was shirtless and carrying one of the infant children in his arms.

35. At the time of the incident, Lorenzo's and Tenisha's children ranged from one month to four years old.

4

36. Lorenzo's waistband was clearly visible with nothing indicating he was in possession of a firearm.

37. Tenisha was holding her and Lorenzo's one month old son.



38. Due to Lorenzo showing up for all his court hearings, including the Preliminary Hearing earlier that morning, Lorenzo and Tenisha briefly attempted to explain the misunderstanding to officers.

39. After handing Tenisha their infant son and his personal possessions Lorenzo, using the universal signal for surrendering, put his hands in the air above his head.



40. At With Lorenzo's hands still clearly in the air and visible to officers he gestured at his residence while stating that his paperwork from court was inside.

41. Lorenzo made no threats or furtive gestures.



42. While Lorenzo's hands remained clearly in the air and visible to officers, Lorenzo was shot with a beanbag shotgun round in the lower abdomen by Mesa Police Department officer Aaron Pew.

6

43. At the time Lorenzo was shot, Tenisha and three of their five minor children were still in close proximity to Lorenzo.

44. After being shot, Lorenzo clutched his chest and fell backwards onto the pavement, landing on the right side of his body.

 

45. After falling onto the pavement, Lorenzo laid flat on his stomach with his hands straight out to his side.

46. With Lorenzo's hands still out to his side and clearly visible to officers, he gestured to Tenisha to take the children inside to safety.




47. Using the PA, Mesa Police officers instructed Lorenzo to get up and walk to the officers.

48. As Lorenzo rolled over and prepared to get up, Mesa Police officer Aaron Pew shot him again, striking him in the groin with a bean bag round.




49. Two seconds after being struck for the second time, Lorenzo put his hands in the air again.

50. While Lorenzo's hands remained in the air, Mesa Police officer Aaron Pew shot Lorenzo with a third bean bag round.



51. Once officer Pew stopped shooting at Lorenzo, he got up, keeping his hands in the air.

52. Lorenzo was then instructed to turn around and walk backward towards officers.

53. Lorenzo was further instructed to walk behind the armored SWAT truck, which put him out of view of the camera.

54. Once Lorenzo was almost completely out-of-view of the camera, officers can be seen violently yanking Lorenzo behind the SWAT truck.

9

 

55. After he was pulled behind the SWAT truck, Lorenzo received multiple abrasions on his face, shoulders, and hands.

56. After Lorenzo was taken into custody, he was treated by the Mesa Fire Department for his injuries.

57. Mesa police subsequently searched Lorenzo's home and again found no firearms or weapons.

## COUNT ONE – BATTERY

58. Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

59. The City of Mesa is vicariously liable for the conduct of its employees.

60. The police officer(s) who shot Lorenzo with the bean bags are, upon information and belief, employees of the City of Mesa.

61. The police officer(s) acted intentionally, shooting Lorenzo three times while he was complying with their commands, was obviously unarmed and presented no threat to justify the shootings.

62. The use of force by police officer(s) against Lorenzo was not immediately necessary to effect his arrest or detention or to prevent his escape.

63. The police officer(s), in shooting three times with bean bags, caused Lorenzo to suffer harmful and offensive contact.

64. Lorenzo suffered physical pain, fear and distress as a result of the police officers' conduct.

65. The police officers' conduct was an affront to Lorenzo's dignity as a human being.

## COUNT TWO – NEGLIGENT TRAINING/SUPERVISION

66. Plaintiff realleges paragraphs 1 through 65 as if fully set forth herein.

67. City of Mesa owed Lorenzo a duty to provide reasonable and necessary training and supervision to its police officers.

68. City of Mesa breached it duty to Lorenzo by failing adequately train and supervise its police officers in the use of force and particularly those officers using excessive, unnecessary and unjustified force in shooting Lorenzo.

69. City of Mesa knew or should have known of its officers propensity to use excessive, unnecessary and unjustified force.

70. City of Mesa acted in reckless indifference to the results of its actions, and the rights or safety of Miguel Camacho, in its failure to adequately train and supervise its police officers.

71. As a result of the City of Mesa's conduct, Lorenzo suffered physical and emotional injuries.

COUNT THREE--- 42 USC s 1983 EXCESSIVE FORCE AGAINST PEW

72. Plaintiff realleges all allegation contained in prior paragraphs of the complaint.

73. Defendant Aaron Pew is being sued in his individual capacity and is a "person" for the purposes of 42 USC s 1983.

74. At all material times, defendant Pew acted under color of state law.

75. Defendant Pew used excessive and objectively unreasonable force against plaintiff in violation of his Fourth and Fourteenth Amendment rights including but necessarily limited to, shooting him three times with bean bag shotgun shell. Pew shot plaintiff the first time as plaintiff stood with his hands in the air offering no resistance. Pew shot plaintiff two more times in the groin as he lay on the ground, incapacitated from Pew's first shot.

76. Pew shot plaintiff even though plaintiff posed no immediate threat to the safety of officers or the public, was not resisting the officers and was not attempting to evade the officers.

77. Pew is not entitled to qualified immunity. At the time Pew used excessive force on plaintiff the law was clearly established that such actions amounted to unconstitutional excessive force.

78. Plaintiff suffered damages as a result of Pew's unconstitutional actions.

79. Pew acted with reckless and callous indifference to plaintiff's federally protected rights entitling plaintiff to punitive damages.

80. Plaintiff is entitled to his costs, including attorneys' fees, pursuant to 42 USC s 1988.

WHEREFORE, Plaintiff Lorenzo Jones respectfully requests that this Court grant relief in Plaintiff's favor, and against Defendants as follows:

A. For physical and emotional distress, discomfort, suffering, humiliation and anxiety already experienced, and reasonably probable to be experienced in the future as a result of the defendants' fault;

B. For punitive damages against defendant Pew in an amount sufficient to deter his misconduct in the future.

C. For his costs and attorneys' fees pursuant to 42 USC s 1988.

D. For such other and further relief as the court deems just.

Dated this 10th day of September 2021.

**TAYLOR & GOMEZ LLP**

/s/ Benjamin Taylor
Benjamin Taylor

**BIHN & McDANIEL, P.L.C.**

/s/ Martin A. Bihn
Martin A. Bihn